## GAUT & McPHERSON *vs.* CARMICHAEL & CO.

When the verdict is without evidence, a new trial must be granted.

Certiorari from Chatham Superior Court. Decided by Judge FLEMING, on the 15th of November, 1860.

Carmichael & Co. brought an action in the city court of Savannah, against Gaut & McPherson, to recover the sum of $288.20 which was alleged to be so much money had and received by the said Gaut & McPherson, to, and for the use of, the said Carmichael & Co. The bill of particulars annexed to the declaration is as follows:

           "Messrs. Gaut & McPherson,
"1857.            To Carmichael & Co.,     .    Dr.
"May 20th. To 100 sacks of wheat short of receipts from invoices, average 2 bushels per sack, making 200 bushels at $1.20         .    $240 20
           "To 109 sacks for same 13c.       13 00
           "To 5 per cent. com's on $253.00     12 60

                              $265 60
           "To error in com'ns admitted       22 60

                              $288 20

Upon the trial of the case, at the May Term, 1859, of said city court, the plaintiffs offered in evidence the following depositions of Augustus Robert, to wit:

"I am personally acquainted with the plaintiffs, and know the defendants from due course of business correspondence with them for the plaintiffs; I am a book-keeper, and served the plaintiffs as bookkeeper and general agent during the year 1857; the account annexed is a copy of an original, prepared by me from plaintiffs' books (in which I made the charges myself), after a careful examination of the business transactions between the plaintiffs and defendants; and I believe the same is correct as stated, and is justly due by the defendants to the plaintiffs; no part of the account has been paid to the plaintiffs to my knowledge; in the early part of the year 1857, the defendants purchased divers lots of wheat for the plaintiffs at a commission of five per cent. for their services, and forwarded invoices, charging the plaintiffs with four thousand and eighty sacks of wheat, for which number the plaintiffs paid them as invoiced; during the months of February, March and April, the defendants forwarded to plaintiffs receipts of the E. T. & G. R. R., and the W. & A. R. R., showing the shipment of three thousand nine hundred and eighty sacks of wheat, which number the plaintiffs received through the Geo. R. R. & B. K. G. Co., with all of which I credited them; the remaining one hundred sacks were never received, nor did the plaintiffs ever get any railroad receipt or other evidence that they had ever been shipped; I therefore charged the defendants with that number (100) short, allowing two bushels to the sack, at one dollar and twenty cents per bushel (that being the average quantity in a sack, and the average of the prices charged, according to the invoices); also, with one hundred sacks or bags, at 13 cents each; and with five per cent. commissions on $253.00, the average cost of the wheat and sacks charged in their invoices; the item for *"error"* defendants admitted by a letter now in the hands of George A. Gordon, plaintiffs' attorney; my knowledge of the facts was derived from the letters of defendants, and their invoices addressed to plaintiffs, received, read and carefully examined by me; from the railroad receipts and bills hereto annexed, and from plaintiffs' books kept by me; I did not measure the wheat; the sacks were counted and checked at the mill by the R. R.

receipts, all of which are annexed except four, and failing to find the originals of the four, I annex *duplicates;* I can not say how much wheat each sack contained without taking the average from the invoices; in that way I ascertained that it would be fair to charge the defendants with two bushels per sack; the average, from the weights, as shown by the railroad receipts, will show a greater number of bushels short, as I announced to defendants by letter of 23d of June, 1857; I did not measure a single sack; it is possible that in some cases the number of sacks may be short, and yet the quantity of wheat be not short, but this is not likely to occur."

These depositions were objected to by counsel for the defendant on various grounds, which were overruled by the Court, and the depositions were all admitted except the statement of the witness as to "the average quantity of wheat per sack, and the average price per bushel."

Charles F. Mills, in behalf of plaintiff, testified: that the price of wheat in 1857 was about one dollar and twenty cents per bushel, but that there were different kinds of wheat, and the price fluctuates at different seasons of the year; the witness knew nothing of the quality or the price of the wheat in question.

Plaintiffs at this point having closed their testimony, the defendants' counsel moved for a judgment of nonsuit, on the ground that the plaintiffs had not proved that they had paid the defendants any amount of money.

This motion was overruled by His Honor Judge MILLEN, presiding in said City Court.

Counsel for the defendants then read in evidence the following depositions of R. M. McClung, to wit:

"I was in the employment of the defendants during the year 1857, and believe that the statement of the plaintiffs correctly represents the dealings between the parties during that year; as all the wheat charged was put in the depot for shipment, I believe it was shipped; I can not say whether the sum as shown by defendants' statement was ever tendered to the plaintiffs, nor can I say that they were ever told that it was subject to their order; all the money sent by plaintiffs to defendants was exhausted in the purchase of wheat, as shown by the annexed statement, and by the books of defendants; defendants did not at the time engage in the

purchase of wheat, except for the plaintiffs, and as no wheat was sold, except one lot too small for shipment, I can not see how the wheat should fall short, as much as claimed by plaintiffs; I am not interested in this suit; I am no kin to Gaut, but am the second cousin of McPherson; I kept the books of defendants, which are now in McPherson's possession; I have had access to them, and upon examination, find them just as I left them; there was no written agreement between the parties; it was the custom of defendants to send railroad receipts generally for each shipment, and such is the customary way of doing business; I made out one or two statements of the account, but do not recollect the date of the accounts, nor the number of sacks called for in each one; the plaintiffs did notify defendants of a discrepancy between their invoices and goods received, and that they claimed the difference."

The testimony being closed, the jury returned a verdict in favor of plaintiffs, for the sum of $288.20 with costs of this suit.

The rulings and judgment of the Court and jury were excepted to by counsel for defendants, and carried by certiorari to the Superior Court of Chatham county, on the following grounds, to wit:

1st. That His Honor Judge Millen erred in overruling the objection made by counsel for the defendants to the depositions of Augustus Robert, on the ground that the witness' statements of the account attached to the interrogatories were only secondary and illegal, being derived from the plaintiffs, and said account being only a copy.

2d. That his Honor erred in admitting in evidence the statement of the witness of matters of fact derived from certain invoices furnished by defendants, and from letters of defendants.

3d. That his Honor erred in overruling the motion of counsel for defendants for a judgment of nonsuit, made on the ground that the evidence of the plaintiffs furnished no statement of damages.

4th. That the verdict of the jury was contrary to law, and contrary to and without evidence.

Upon hearing the certiorari, His Honor Judge Fleming dismissed the same, and affirmed the judgment of the City Court. This decision is the error alleged.

WILSON, NORWOOD & LESTER, for the plaintiffs in error.

No appearance for the defendants in error.

*By the Court.*—LYON, J., delivering the opinion.

On the trial of this cause before the Judge of the City Court of Savannah, counsel for the defendant objected to the admissibilty of certain parts of the evidence of the witness, Augustus Robert, in this: That the statements of the witness, as to the account sued upon, were secondary, derived from plaintiffs, from invoices and letters, that were not introduced in evidence, or accounted for.    The testimony is open to this objection, but as no fact, materially affecting the issue, is drawn out by this reference, we have not thought it necessary to consider the objection.    Neither is it necessary to consider the motion for nonsuit, as the merits of that question, and all others in the case is involved in the fourth and last exception, namely: That the verdict is without evidence, and contrary to, evidence and law.    This exception, we think, was well taken, and ought to have been sustained by the Court below.

The action was brought for the recovery of the loss sustained by the non-delivery of 100 sacks of wheat for which the plaintiffs had paid the defendants.

It appears from the evidence of the witness, Robert, who was clerk and bookkeeper for the plaintiffs, that the defendants, in the Spring of 1857, purchased for the plaintiffs four thousand and eighty sacks of wheat, at a commission of 5 per cent., for which the plaintiffs paid them.    Of this only three thousand nine hundred and eighty sacks were forwarded to, or received by, the plaintiffs.    This part of the plaintiffs' case is sufficiently made out; that is, that there was 100 sacks short; but how much these sacks contained, or the price paid by plaintiffs to defendants for the contents of the sacks, does not appear, nor did the witness know.    He says he estimated the costs of the various lots purchased, and of the quantity contained in the whole lot, and from this estimate he deduced the average cost per bushel, as well as the average contents of each sack.    It was in this way the witness made up the account, and he says he believes the same to be correct as stated, and justly due by defend-

ants to plaintiffs. But this belief is founded altogether on the estimate made by the witness from the invoices, letters, etc., before him. This belief of the witness was not evidence of the fact for the jury, however conclusive it may have been to the witness. The jury should have had these invoices, letters, etc., before them, so as to have made the calculations for themselves; had they have come to the same conclusion as the witness, from their own estimates, upon an examination of the same date, the verdict would have been good; but they might have come to a different one. The Judge of the City Court excluded from the jury that part of the witness' evidence as to the average contents of the sacks, and the average cost of the wheat per bushel and very properly, we think. This testimony being out, there was absolutely no evidence before the jury of the contents of the sacks, or the cost of the wheat therein. Yet, the jury, by their verdict, say that there was two bushels in each sack, that cost one dollar and twenty cents per bushel. That much of the finding, therefore, was without evidence, and a new trial must accordingly be granted.

## JUDGMENT.

Whereupon, it is adjudged by the Court, that the judgment of the Court below be reversed, on the ground, that the Court erred in not reversing the judgment of the City Court. A new trial should have been granted on the ground, that the verdict was without evidence.